**SHAKED LAW GROUP, P.C.**
Dan Shaked, Esq.
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
Email: ShakedLawGroup@gmail.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
  NADRECA REID,

                                    Plaintiff,                    Case No. 24-cv-7988

                  - against -

  THE HOME DEPOT, INC.,                                           **COMPLAINT**

                                    Defendant.
---------------------------------------------------------X

## INTRODUCTION

1. Plaintiff, Nadreca Reid ("Plaintiff" or "Reid"), brings this action on behalf of herself against The Home Depot, Inc. (hereinafter "Home Depot" or "Defendant"), and states as follows:

2. Plaintiff is a visually-impaired and legally blind person who requires the use of her smartphone and audio directions to independently navigate the world around her. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.  Some blind people who meet this definition have limited vision; others have no vision.

3. Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to

1

the American Foundation for the Blind's 2015 report, approximately 400,000 visually impaired persons live in the State of New York.

4. Plaintiff brings this civil rights action against Home Depot for their failure to design, construct, and maintain their physical store at the Bronx Terminal Market free of existing accessibility barriers and for their failure to provide auxiliary aids providing effective communication to allow Plaintiff to independently navigate the store. Defendant is denying blind and visually-impaired persons throughout the United States with equal access to the goods, services, and information Home Depot provides to their non-disabled customers through its failure to provide wayfinding mechanisms which would enable Plaintiff to independently navigate the store and locate permanent rooms and spaces, including entrances and exits, elevators, bathrooms, places of emergency refuse, and other similar locals. Defendant's denial of full and equal access to its store, and therefore denial of its products and services offered, and in conjunction with its physical locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act (the "ADA").

5. Home Depot provides to the public a wide array of goods and services including a wide range of home improvement and related products which are sold at over 2,300 company-owned stores. Yet, the lack of wayfinding technology creates access barriers that make it impossible for Plaintiff to independently navigate the store. Thus, Home Depot excludes the blind and visually-impaired from the full and equal participation in the economy that is a fundamental part of the common marketplace and daily living.

6. Gone are the days when blind people had to rely on the white cane, the kindness of others, or even a service animal to navigate their surroundings. Technology has rapidly evolved over the past decade in ways that enable the blind to navigate their surrounds

without assistance from other people, white canes, or animals. In the wave of technological advances in recent years, wayfinding technology is becoming an increasingly prominent part of everyday life, allowing blind and visually-impaired persons to fully and independently navigate their surroundings. All it takes is a little willpower on behalf of Home Depot to make its store accessible to Plaintiff and other blind and visually impaired persons.

7. The lack of wayfinding technology means that Plaintiff is excluded from experiencing and transacting with defendant's store and from purchasing goods or services at defendant's store.

8. Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail store, which make use of wayfinding technology, Defendant has chosen to rely on an exclusively visual interface. Home Depot's sighted customers can independently navigate the store, locate products, locate the checkout counter, locate the restrooms, locate the entrance and exit, and make purchases without the assistance of others. However, blind persons must rely on sighted companions to assist them in accessing and making purchases at the Home Depot store.

9. By failing to provide adequate auxiliary aids, Defendant is violating basic equal access requirements under city, state and federal law.

10. Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by public accommodations that are inaccessible to blind and visually impaired persons. Similarly, New York State and New York City laws require

places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

11. Plaintiff visited the Home Depot store in the Bronx Terminal shopping center, in July, September and October 2024 in order to purchase window blinds, a sink faucet, and tools, amongst other products. Defendant has always been interested in making purchases at Home Depot store, and has attempted to access and navigate the interior of the store on many occasions, but was unable to independently do so. Unless Defendant remedies the numerous access barriers in its store, Plaintiff will continue to be unable to independently navigate, access, and transact commerce at a Home Depot store.

12. Because Defendant's store is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change in Home Depot's policies, practices, and procedures so that navigating the store, accessing signage, and transacting commerce will become and remain accessible to blind consumers. This complaint also seeks compensatory damages to compensate Plaintiff for having been subjected to unlawful discrimination.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, and 28 U.S.C. § 1332, and the amount in controversy exceeds the sum or value of $75,000, excluding interest and costs. See 28 U.S.C. § 1332(a).

14. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under the New York State Human Rights Law, N.Y. Exec. Law,

Article 15 (Executive Law § 290 *et seq*.) and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 *et seq*. ("City Law").

15. Venue is proper in this District of New York pursuant to 28 U.S.C. §§ 1391(b)-(c) and 144(a) because Plaintiff resides in this District, Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District.

16. Defendant is registered to do business in New York State and has been conducting business in New York State, including in this District. Defendant maintains Brick-and-mortar places of accommodation in this District which are subject to personal jurisdiction in this District. Defendant also has been and is committing the acts alleged herein in this District and has been and is violating the rights of consumers in this District and has been and is causing injury to consumers in this District. A substantial part of the act and omissions giving rise to Plaintiff's claims have occurred in this District.

## PARTIES

17. Plaintiff, is and has been at all relevant times a resident of Bronx County, State of New York.

18. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(l)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., the New York State Human Rights Law and the New York City Human Rights Law. Plaintiff, has been denied the full enjoyment of the facilities, goods and services of Defendant's brick and mortar locations, as a result of accessibility barriers.

19. Defendant, The Home Depot, Inc., is a Delaware Foreign Business Corporation doing business in this District with its principal place of business located at 2455 Paces Ferry Road, Atlanta, GA 30339.

20. Defendant owns and operates the Home Depot Store at the Bronx Terminal Market (hereinafter, "Home Depot Store" or "Store"), which is a place of public accommodation.

21. The Home Depot Store provides to the public important goods and services including home improvement products, lawn and garden products, décor products, and installation services, amongst the many items sold and services provided at the Store. The existing barriers and lack of auxiliary aids providing effective communication has deterred Plaintiff from navigating or making purchases at Defendant's store.

22. Defendant's location is a place of public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

**NATURE OF THE CASE**

23. Today, Americans are increasingly connected to the world of digital information while "on the go" via smartphones.[1] Indeed, a growing share of Americans use smartphones as their primary means of online access. The use of smartphones has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

---

[1] The wide-scale adoption of this technology is staggering. According to Pew Research Center, the vast majority of Americans – 96% – now own a cellphone of some kind. And the share of Americans that own smartphones has climbed from just 35% in 2011 to 81% in 2019—amounting to more than 265 million people in the United States. U.S and World Population Clock, U.S. Census Bureau, https://www.census.gov/popclock/ (last accessed Sept. 22, 2022) (U.S. population on June 12, 2019 was 328.1 million).

24. The ADA is an evolving law that has changed over time to accommodate new circumstances and protect more people. For example, the ADA does not include "websites" in its exhaustive list of places of public accommodation. Yet, every single court in the country has determined that a website is a place of public accommodation, especially if there is a nexus to a brick-and-mortar location. It is now commonly accepted that a website must be accessible to the blind.

25. With that premise in mind, Plaintiff argues that the plain language of the ADA, when combined with advances in technology, contains gaping holes which Plaintiff seeks to redress. Wayfinding, as will be defined below, currently includes Braille signs posted near permanent rooms and spaces as well as the requirement for accessible routes and accessible directional and informational signs. When it comes to wayfinding, these requirements are technologically years behind and wholly ineffective when addressing the needs of the blind.

## BRAILLE SIGNS

26. Once inside a store, a blind person requires communication of relevant information such as "Where can I find [product name]?" "Where is the checkout counter?" "Where are the bathrooms/"? "What is next to me?" "Which way to the exit?" Pursuant to the 2010 ADA Standards for Accessible Design, interior and exterior signs identifying permanent rooms and spaces need to be provided in Braille and need to identify access to entrances and exits, elevators, bathrooms, places of emergency refuse, and other similar locals[2]. However, an examination by the National Federation of the Blind estimated that less than ten (10%) of blind persons can read Braille[3]. Even if a blind person can read Braille, how are they to find the Braille sign? The Braille

---

[2] U.S. Dep't of Just., 2010 ADA Standards for Accessible Design, § 216 et seq. and §703 et seq. (20100 [hereinafter "2010 ADA Standards].

[3] National Federation of the Blind, *The Braille Literacy Crisis in America, Facing the Truth, Reversing the Trend, Empowering the Blind*, March 26, 2009.

sign may read *Women's bathroom*, but "how do I get to the bathroom?" Therefore, a disconnect exists between the mandate and reality, resulting in Braille signs not being an "effective communication" to navigating a store. As the ADA requires a public accommodation to offer "[g]oods, services, facilities, privileges, advantages, and accommodations . . . in the most integrated setting appropriate to the needs of the individual,[4]" it follows that having a system that is more effective and technologically advanced than Braille signs, would be useful to the disabled, and would help the disabled "to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity[5]." In other words, there must be a better alternative that provides "effective communication" and still complies with the intent of the ADA and its guidelines.

## INDEPENDENT WAYFINDING TECHNOLOGY

27. The dictionary definition of "wayfinding" is "the process or activity of ascertaining one's position and planning and following a route." Wayfinding has been applied to the use of signs and visual and sensory clues in the built environment. A contemporary and timeless definition of "wayfinding" is found in the analysis by Paul Symonds and others as "[t]he cognitive, social and corporeal process and experience of locating, following or discovering a route through and to a given space[6]." Disabilities limit the effectiveness of most modern wayfinding. Visual systems (i.e. Exit signs, bathroom signs, etc.) do not work for the blind.

28. Independent wayfinding allows a blind person to navigate their surrounding

---

[4] 42 U.S.C. § 12182(b)(1)(B).
[5] 42 U.S.C. § 12101(a)3).
[6] David Ferleger, *Getting from Points A to Points B: Wayfinding, Public Accommodations, and the ADA*, 170 U. Pa. L. Rev. Online at 113 (2022) *citing* Paul Symonds, David H.K. Brown & Valeria Lo Iacono, *Exploring an Absent Presence: Wayfinding as an Embodied Sociocultural Experience*, SOCIO. RSCH. ONLINE, Feb. 2017 ¶ 4.12.

without the guidance of another person. Independent wayfinding technology can help a blind person find the bathroom, find the checkout counter, find specific products, find the entrance/exit, and simply and independently navigate their surroundings. Independent wayfinding is becoming more critical as companies reduce store employees in an effort to cut costs and as the remaining employees become busier. The benefits of independent wayfinding technology are not limited to the blind. People with other disabilities, including cognitive disabilities and sensory impairments can benefit from independent wayfinding technology. Even fully sighted persons can benefit from wayfinding technology – how many times have you needed to visit the bathroom, and no employee was around to direct you?

29. There is ample evidence and experience with available digital technology to achieve effective communication, and thus enable blind persons to utilize independent wayfinding. The most common, but not only, digital technology for wayfinding involves the use of Bluetooth or similar electronic beacons, amongst other available systems, for navigating indoor and even outdoor surroundings. Such mechanisms facilitate independent wayfinding and constitute an effective auxiliary communication. In other words, with a smartphone app and an earbud, a blind person can benefit from a public accommodation's use of independent wayfinding mechanisms and thus, more effective communication is facilitated[7].

30. Independent wayfinding technology has been implemented in many settings throughout the world by many government entities as well as private corporations. It can be as simple as installing Bluetooth beacons to pinpoint crucial spots like bathrooms and exits. Blind customers can then use a free app to hear audio directions as well as information about their environment. Retailers and other interior and exterior locations have realized the advantages of

---

[7] David Ferleger, *Getting from Points A to Points B: Wayfinding, Public Accommodations, and the ADA*, 170 U. Pa. L. Rev. Online at 117 (2022)

wayfinding technology, and hundreds of companies, including McDonalds, Pizza Hut, WeWork, Costa Coffee, Hyatt Hotels, the Lighthouse for the Blind, Buunni Coffee, JPMorgan Chase Bank, the East Brunswick Public Library, and many others have installed wayfinding technology as an auxiliary aid providing an effective communication to their blind and disabled customers and patrons.

31. Bluetooth beacons for creating "talking signs" or wayfinding, is an established and commonly utilized technology around the world. The Bluetooth beacons are basically small radio transmitters that send out Bluetooth signals to help with indoor positioning. Nearby devices, like smartphones, can pick up the signals and use them to calculate the distance from the beacons. The beacons can be placed in fixed positions such as bathroom entrances, cash registers, various store departments, entrances and exits, and other permanent and safety locations. Beacons are energy efficient and easy to install. The technology uses a mobile application that notifies the user when they enter an accessible spot using audio guidance and provides them with space orientation when they point their phone in a specific direction, enabling blind or visually impaired individuals to turn public spaces into accessible environments.

32. The cost of implementing wayfinding technology is minimal compared to the cost of utilizing an employee to conduct the same service. Moreover, it may lead to economic returns in the long run. Also, the government provides relevant tax benefits, as many businesses would qualify for a tax credit for removal of accessibility barriers[8]. As such, installing a wayfinding system would not be an undue burden to Defendant.

**WAYFINDING TECHNOLOGY IS THE MOST EFFECTIVE AUXILIARY AID**

---

[8] See 26 U.S.C. § 44(a) and 26 U.S.C. § 190(a)(1).

33. When it comes to what type of auxiliary aid results in the most effective communication, the Department of Justice implementing regulations recognize that "the ultimate decision as to what measures to take rests with the public accommodation, provided that the method chosen results in effective communication[9]." Wayfinding technology provides the most "effective communication" that a store can provide. It provides the blind customer with a "full and equal enjoyment" of the public accommodation. Independent wayfinding offers flexibility of use and locational precision. The blind person's device will guide them: "turn left for the [type of product]," "you arrived at [product type]," "go straight for the bathrooms," "turn around to head towards the cash register." Wayfinding also ensures that the disabled maintain a semblance of privacy while shopping. The ADA's "auxiliary aids and services" requirement demands attention to technological development when that technology is necessary for effective communication. As such, independent wayfinding through available and affordable technology satisfies the requirement of an effective communication.

**ACCESSIBLE ROUTES**

34. The ADA Accessibility Guidelines (the "ADAAG") also require that a place of public accommodation provide accessible routes within a site[10], interior and exterior signs identifying permanent rooms and spaces, signs that provide direction to or information about interior spaces and facilities, including signs for exit doors, areas of refuge, entrances, elevators, and bathrooms[11].

35. A blind person requires accessible routes. That is, a way to independently navigate through the public accommodation. Without wayfinding technology, a blind person

---

[9] 28 C.F.R. § 36.303(c)(1)(ii).
[10] ADAAG § 206.2.2
[11] *Id*. § 216 *et seq*.

cannot navigate through the winding and inter-connecting aisles of a store and therefore, does not have the luxury of accessible routes. If a store implemented wayfinding technology, Plaintiff and other blind persons could simply choose their destination and follow the audio directions through the aisles of the public accommodation.

36. Likewise, navigational signs are meaningless, unless they could talk.  Tactile numbers and letters may be effective on keypads, but do not help blind persons navigate a store.

37. Just like a store with narrow aisles that cannot accommodate a wheelchair, the lack of wayfinding technology makes it impossible for blind persons to navigate and make purchases at the Home Depot Store.

## FACTUAL ALLEGATIONS

38. This case arises out of Home Depot's policy and practice of denying the blind access to independently navigate its store.  Due to Home Depot's failure and refusal to provide accessible routes, accessible directional and informational signs, and adequate auxiliary aids which would allow Plaintiff to navigate its store and to locate important and safety locations through the store, Plaintiff has been and is being denied equal access to Home Depot Store, as well as to the numerous goods, services and benefits offered to the public through the Home Depot Store.

39. For sighted persons, the Home Depot Store provides navigational signs identifying each aisle by number along with a written description of the category of items that can be found in the aisle. Checkout counters and customer service counters are also identified by signs pointing to their location. Exit signs are posted throughout the store and signs identifying the men's and Women's bathroom can also be found. However, these signs cannot be identified or read by blind persons. The directions and locations of the places identified by these signs cannot be found by blind visitors to the Store, including by Plaintiff.

40. On July, 2024, September, 2024, and October 14, 2024, Plaintiff entered Defendant's store for the purpose of purchasing window blinds, a sink faucet, and tools, amongst other products. Once in the store, Plaintiff needed to locate the aisles containing the products she sought to purchase, access the checkout counter, access the women's bathroom, and locate the store exit. Defendant's store is approximately 1.6 miles from Plaintiff's home. Plaintiff visits the Bronx Terminal Market and its many shops, including Home Depot, at least once a month. She visits the Home Depot, on average, 4 times per year.

41. Because of the lack of accessible routes, accessible directional and informational signs, and auxiliary aids providing effective communication, Plaintiff was unable to locate accessible navigable routes, unable to independently navigate the store, and unable to locate permanent rooms and spaces.

42. Because of the lack of accessible routes, accessible directional and informational signs, and auxiliary aids providing effective communication, Plaintiff was denied full and equal access to, and full and equal enjoyment of, the commercial space and public accommodations within Defendant's premises.

43. Because of the lack of accessible routes, accessible directional and informational signs, and auxiliary aids providing effective communication, Plaintiff was unable to navigate Defendant's store to inquire about and shop for window blinds, a sink faucet, and tools, amongst other products, locate the checkout counter, locate the women's bathroom, and locate the exit, amongst other important store features. Nor was Plaintiff offered any assistance in navigating Defendant's premises.

44. Home Depot Store employees are often busy helping other customers and

often do not have the time and patience to assist a blind person. Plaintiff carries a white cane which identifies her as a blind person. In most stores that she visits, when an employee sees the white cane, they approach her to see if she needs assistance. Not so at the Home Depot store. When visiting Defendant's store, Plaintiff was not approached by any store employee. Plaintiff attempted to ask for assistance but no one assisted her. When she did locate an employee, the employee only spoke Spanish, a language that Plaintiff does not understand. Defendant is renowned for having poor customer service and has consistently received very low reviews for its customer service[12]. The lack of wayfinding technology prevented Plaintiff from finding the department she was looking for, the women's bathroom, the checkout area, and the exit. By contrast, if Defendant provided auxiliary aids in the form of wayfinding technology, Plaintiff would not have to rely on store employees and would be able to independently locate the products she was interested in purchasing, locate the women's bathroom, locate the checkout counter, locate the exit, and navigate the entire store without the assistance of the busy employees and without compromising her privacy.

45. Because Plaintiff is routinely in the area of Defendant's store, Plaintiff has since returned to Defendant's store because it is located within the shopping center that she frequents regularly; however, Defendant continues to lack auxiliary aids which provide effective communication thereby preventing Plaintiff from locating accessible navigable routes, independently navigating the store, and from locating permanent rooms and spaces. Accordingly, Plaintiff has and continues to suffer an injury in fact.

---

[12] Reviews.io gives Home Depot customer service 1.7 stars out of 5; consumeraffairs.com give Home Depot 1.3 stars out of 5; and TrustPilot.com gives Home Depot 1.6 stars out of 5.

46. By failing to provide wayfinding technology, the Home Depot Store contains access barriers which deny the full and equal access to Plaintiff and who would otherwise be able to fully and equally enjoy the benefits and services of the Home Depot Store.

47. Defendant is denying Plaintiff the opportunity to participate in and benefit from the services or accommodations offered within Defendant's store because of her disability, thereby, causing Plaintiff to suffer an injury in fact. If Home Depot would utilize wayfinding technology as an effective communication to help its blind clients navigate its store, it would not need to spend money and resources on other auxiliary aids – none of which can be as effective as wayfinding technology.

48. Plaintiff loves shopping at the Home Depot store. In fact, she prefers to browse and make purchases in person as opposed to making purchases online. She has visited the Home Depot Store on many occasions for purposes of making purchases. However, the purchases were always made with the assistance of friends or family members since she is unable to independently navigate the large store. When shopping with others, they can read the navigational and information signs, lead Plaintiff through the aisles towards the products that she wants to buy, lead her to the women's bathrooms, lead her to the checkout counter, and lead her to the exit/entrance of the store. However, when visiting on her own, she has never been able to make a purchase since she could not navigate the store. Moreover, she was never able to receive assistance from any salesperson. Plaintiff has attempted to ask for assistance without success. On July 2024, September 2024, and again on October 14, 2024, Plaintiff visited the Home Depot Store in the Bronx Terminal Market. On all occasions, she was alone and was unable to independently navigate the store. On all occasions she did not receive any assistance from any sales persons or other staff members. The only salesperson that she encountered in the store did

not speak English; only Spanish. Plaintiff does not understand Spanish. Plaintiff wanted to make purchases of window blinds, a sink faucet, and tools, amongst other products, and needed to visit the women's bathroom. These access barriers have caused Home Depot to be inaccessible to, and not independently usable by, blind and visually-impaired persons.

49. Moreover, if Defendant incorporates wayfinding technology to its store, Plaintiff will definitely visit the Home Depot Store in the future in order to independently purchase home improvement and related products. The Home Depot store is conveniently located only 1.6 miles from Plaintiff's home and Plaintiff uses public transportation and/or Access-A-Ride to reach her destinations. The Store offers a wide selection of goods and services. Plaintiff has visited the Home Depot Store many times before, loves the products, enjoys the in-person shopping experience and environment, and has made purchases at the Store. As such, Plaintiff intends on returning to Home Depot store in the future to purchase additional home improvement products, cleaning supplies, household goods, tools, and plants, among other products and services. Specifically, in additional to the items that she intended to purchase during her recent visits, Plaintiff anticipates purchasing some plants (including mums) and a humidifier for the winter.

50. As a result of the access barriers described above, and others, Defendant failed to effectively communicate information about its store, its products and its services to Plaintiff, which in turn denied Plaintiff full and equal access to Defendant's Store and deterred her from returning to the store in the future.

51. As described above, Plaintiff has actual knowledge of the fact that Defendant lacks auxiliary aids which provide an effective communication.

52. These barriers to access have denied Plaintiff full and equal access to, and enjoyment of, the goods, benefits and services of the Home Depot Store.

53. Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

(a) constructed and maintained physical premises that are inaccessible to Plaintiff with knowledge of the discrimination; and/or

(b) constructed and maintained physical premises that are not sufficiently intuitive and/or obvious that it is inaccessible to Plaintiff; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to Plaintiff and other blind persons.

54. Defendant utilizes standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

55. The ADA "as a whole is intended 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'"[13]

56. Title III advances that goal by providing that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."[14]

57. DOJ regulations require that a public accommodation "furnish appropriate

---

[13] *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 589 (1999) (*quoting* 42 U.S.C. § 12101(b)(1).
[14] 42 U.S.C. § 12182(a)

auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities."[15]

58. DOJ defines "auxiliary aids and services" to include "accessible electronic and information technology" or "other effective methods of making visually delivered materials available to individuals who are blind or have low vision."[16]

59. Therefore, the ADA mandates that places of public accommodation provide auxiliary aids and services to make navigation and the location of permanent and safety places available to individuals who are blind.[17]

60. Defendant is a place of public accommodation under the ADA because it is a "sales or rental establishment" and/or "other service establishment."[18]

61. As a service, facility, advantage, or accommodation of Defendant, Defendant must ensure blind patrons have full and equal access to the product information available at Home Depot Store.

62. Because of Defendant's denial of full and equal access to, and enjoyment of, the goods, benefits and services of the Home Depot Store, Plaintiff has suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of defendant's conduct.

## **FIRST CAUSE OF ACTION**
(Violation of 42 U.S.C. §§ 12181 *et seq.* – Title III of the Americans with Disabilities Act)

63. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 62 of this Complaint as though set forth at length herein.

---

[15] 28 C.F.R. § 36.303(c)(1); *see Bragdon v. Abbott*, 524 U.S. 624, 646 (1998) (holding that DOJ's administrative guidance on ADA compliance is entitled to deference).
[16] 28 C.F.R. § 36.303(b)(2).
[17] 28 C.F.R. § 36.303.
[18] 42 U.S.C. § 12181(7)(E), (F)

64. Title III of the American with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12181(b)(2)(D)(I).

65. The Home Depot Store located in the Bronx Terminal Market is a sales establishment and public accommodation within the definition of 42 U.S.C. §§ 12181(7)(E).

66. Defendant is subject to Title III of the ADA because it owns and operates Home Depot Store.

67. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

68. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

69. Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals

with disabilities, unless the entity can demonstrate that making such modifications would
fundamentally alter the nature of such goods, services, facilities, privileges, advantages or
accommodations."

70. In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III),
unlawful discrimination also includes, among other things, "a failure to take such steps as may
be necessary to ensure that no individual with disability is excluded, denied services, segregated
or otherwise treated differently than other individuals because of the absence of auxiliary aids
and services, unless the entity can demonstrate that taking such steps would fundamentally alter
the nature of the good, service, facility, privilege, advantage, or accommodation being offered or
would result in an undue burden."

71. There are readily available, well-established, and cost-effective mechanisms
and technologies available for enabling blind persons to navigate the interior of a store such as
Home Depot.  These mechanisms have been followed by other business entities which enable
blind persons to navigate their facilities and locate permanent and safety spaces without the use
of and reliance on employees.  Incorporating such wayfinding technology would neither
fundamentally alter the nature of Defendant's business nor result in an undue burden to
Defendant.

72. The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C.
§ 12101 *et seq*., and the regulations promulgated thereunder.  Patrons of the Home Depot Store
who are blind have been denied full and equal access to the store, have not been provided
services that are provided to other patrons who are not disabled, and/or have been provided
services that are inferior to the services provided to non-disabled patrons.

20

73. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

74. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the Home Depot Store in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq*. and/or its implementing regulations.

75. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

76. The actions of Defendant were and are in violation of the ADA, and therefore Plaintiff invokes her statutory right to injunctive relief to remedy the discrimination.

77. Plaintiff is also entitled to reasonable attorneys' fees and costs.

78. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

**SECOND CAUSE OF ACTION**
(Violation of 42 U.S.C. §§ 12181 *et seq*. – Title III of the Americans with Disabilities Act)

79. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 78 of this Complaint as though set forth at length herein.

80. The ADA prohibits discrimination on the basis of disability by, inter alia, guaranteeing individuals with disabilities are provided with reasonable accommodations that enable free travel and independent access to commercial establishments, commercial spaces, and public accommodations by the owners and operators of same.

81. Defendant discriminated, and continues to discriminate, against Plaintiff by denying her the full and equal access to, and the full and equal enjoyment of, the goods, services,

facilities, privileges, advantages, and accommodations offered by Defendant at Defendant's Premises, in violation of the ADA.

82. Plaintiff has been, and continues to be, unable to enjoy the full and equal safe access to, and the benefits of, all the accommodations and services offered by Defendant at Defendant's Premises.

83. Plaintiff visited Defendant's Premises with the intention of utilizing the commercial establishment, commercial space, and public accommodation within Defendant's facility, but was denied access because of the lack of accessible routes and accessible directional and informational signs that prevent access and restrict travel, and therefore suffered an injury in fact.

84. Plaintiff continues to reside in New York and desires to visit Defendant's Premises in the future but continues to be injured by Defendant's failure to provide accessible routes and accessible directional and informational signs that prevent access and restrict travel to and from and within Defendant's Premises. Accordingly, Plaintiff continues to be discriminated against in violation of the ADA, NYSHRL, NYCHRL, et seq.

85. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the Americans with Disabilities Act Accessibility Guidelines, 28 C.F.R. Part 36, under which said Department may obtain civil penalties of up to $55,000 for the first violation and $110,000 for any subsequent violation.

86. Defendant's Premises are in violation of the ADA, 42 U.S.C. § 12181 et seq., and the Accessibility Standards, and is discriminating against the Plaintiff, in pertinent part, as a result of the following violations:

a. Defendant's Premises lack accessible routes and accessible directional and informational signs within Defendant's store in violation of Sections 206.2.2, 216.2, 216.3, 216.4, 216.6, 216.7, and 216.8 of the 2010 ADAAG Standards. Specifically, Defendant does not provide Plaintiff with the available wayfinding technology which would enable her to freely and independently navigate Defendant's Premises and locate important permanent and safety spaces including entrances and exits, areas of refuge, elevators, products available for sale, and bathrooms.

b. Defendant's Premises fail to provide accessible merchandise and/or merchandise displays throughout the Premises.

c. Defendant's Premises fail to provide adequate directional and accurate informational signage throughout the commercial space and public accommodation.

d. Defendant's Premises fail to provide a safe and accessible means of egress for emergencies.

e. Defendant's Premises fail to adhere to a policy, practice, and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

87. To date, the barriers and violations of the ADA at and within Defendant's Premises still exist, and the removal of same are readily and inexpensively achievable; however, these violations have not been remedied or altered in any way.

88. Pursuant to the ADA and the Accessibility Standards, Defendant was required to make its premises, a place of public accommodation, accessible to persons with disabilities since January 28, 1992. To date, Defendant has failed to comply with this mandate.

89. Defendant failed to make all readily achievable accommodations and modifications that would remove barriers and create independent access to Defendant's Premises and independent navigation within Defendant's Premises.

90. Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant the Plaintiff injunctive relief, including an order to alter Defendant's Premises to make them readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, and order the closing of Defendant's Premises until the required modifications are completed.

91. Plaintiff has suffered and will continue to suffer damages because of Defendant's violations of the ADA in an amount to be determined at trial or by the Court, along with an award of Plaintiff's reasonable attorneys' fees, expenses, and costs as provided for by the ADA.

### THIRD CAUSE OF ACTION

(Violation of New York State Human Rights Law, N.Y. Exec. Law
Article 15 (Executive Law § 292 *et seq.*))

92. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 91 of this Complaint as though set forth at length herein.

93. N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof.".

94. The Home Depot Store located in the Bronx Terminal Market is a sales establishment and public accommodation within the definition of N.Y. Exec. Law § 292(9).

95. Defendant is subject to the New York Human Rights Law because it owns and operates the Home Depot Store.  Defendant is a person within the meaning of N.Y. Exec. Law. § 292(1).

96. Defendant is violating N.Y. Exec. Law § 296(2)(a) in refusing to remove access barriers to the product and services offered, causing the Home Depot Store to be completely inaccessible to the blind.  This inaccessibility denies blind patrons the full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

24

97. Specifically, under N.Y. Exec. Law § unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations."

98. In addition, under N.Y. Exec. Law § 296(2)(c)(II), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

99. There are readily available, well-established, and cost-effective mechanisms and technologies available for enabling blind persons to navigate the interior of store such as Home Depot. These mechanisms have been followed by other business entities which enable blind persons to navigate their facilities and locate permanent and safety spaces without the use of and reliance on employees. Incorporating such wayfinding technology would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

100. Defendant's actions constitute willful intentional discrimination against the Plaintiff and other blind persons on the basis of a disability in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296(2) in that Defendant has:

(a) constructed and maintained physical premises that are inaccessible to Plaintiff and other blind persons with knowledge of the discrimination; and/or

(b) constructed and maintained physical premises that are not sufficiently intuitive and/or obvious and are inaccessible to Plaintiff and other blind persons; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to Plaintiff and other blind persons.

101. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

102. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the Home Depot Store under N.Y. Exec. Law § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

103. The actions of Defendant were and are in violation of the New York State Human Rights Law and therefore Plaintiff invokes her right to injunctive relief to remedy the discrimination.

104. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines pursuant to N.Y. Exec. Law § 297(4)(c) *et seq.* for each and every offense.

105. Plaintiff is also entitled to reasonable attorneys' fees and costs.

106. Pursuant to N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

### FOURTH CAUSE OF ACTION
(Violation of New York State Civil Rights Law, NY CLS Civ R,

Article 4 (CLS Civ R § 40 *et seq.*))

107. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 106 of this Complaint as though set forth at length herein.

108. Plaintiff served notice thereof upon the attorney general as required by N.Y. Civil Rights Law § 41.

109. N.Y. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons.  No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . ."

110. N.Y. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

111. The Home Depot Store located in the Bronx Terminal Market is a sales establishment and public accommodation within the definition of N.Y. Civil Rights Law § 40-c(2).

112. Defendant is subject to New York Civil Rights Law because it owns and operates the Home Depot Store.  Defendant is a person within the meaning of N.Y. Civil Law § 40-c(2).

113. Defendant is violating N.Y. Civil Rights Law § 40-c(2) in refusing to remove access barriers to the Store, causing the Home Depot Store to be completely inaccessible to the blind.  This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

114. There are readily available, well-established, and cost-effective mechanisms and technologies available for enabling blind persons to navigate the interior of store such as the Home Depot Store.  These mechanisms have been followed by other business entities which enable blind persons to navigate their facilities and locate permanent and safety spaces without the use of and reliance on employees.  Incorporating such wayfinding technology would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

115. In addition, N.Y. Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . ."

116. Specifically, under N.Y. Civil Rights Law § 40-d, "any person who shall violate any of the provisions of the foregoing section, or subdivision three of section 240.30 or section 240.31 of the penal law, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the defendant shall reside . . ."

117. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct.  These violations are ongoing.

118. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability are being directly indirectly refused, withheld from, or denied the accommodations, advantages, facilities and privileges thereof in § 40 *et seq.* and/or its implementing regulations.

119. Plaintiff is entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines pursuant to N.Y. Civil Rights Law § 40 *et seq.* for each and every offense.

## FIFTH CAUSE OF ACTION
(Violation of New York City Human Rights Law,
N.Y.C. Administrative Code § 8-102, *et seq.*)

120. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 119 of this Complaint as though set forth at length herein.

121. N.Y.C. Administrative Code § 8-107(4)(a) provides that "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

122. The Home Depot Store located in the Bronx Terminal Market is a sales establishment and public accommodation within the definition of N.Y.C. Administrative Code § 8-102(9).

123. Defendant is subject to City Law because it owns and operates the Home Depot Store.  Defendant is a person within the meaning of N.Y.C. Administrative Code § 8-102(1).

124. Defendant is violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to its products and services, causing the Home Depot Store to be completely inaccessible to the blind.  This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.  Specifically, Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity."  N.Y.C. Administrative Code § 8-107(15)(a).

125. Defendant's actions constitute willful intentional discrimination against the Plaintiff and other blind persons on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has:

(a) constructed and maintained physical premises that are inaccessible to Plaintiff and other blind persons with knowledge of the discrimination; and/or

(b) constructed and maintained physical premises that are not sufficiently intuitive and/or obvious and are inaccessible to Plaintiff and other blind persons; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to Plaintiff and other blind persons.

126. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct.  These violations are ongoing.

127. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability in the full and equal enjoyment of the

goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the

Home Depot Store under N.Y.C. Administrative Code § 8-107(4)(a) and/or its implementing

regulations.  Unless the Court enjoins Defendant from continuing to engage in these unlawful

practices, Plaintiff and other blind persons will continue to suffer irreparable harm.

128. The actions of Defendant were and are in violation of City law and therefore

Plaintiff invokes her right to injunctive relief to remedy the discrimination.

129. Plaintiff is also entitled to compensatory damages, as well as civil penalties

and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense.

130. Plaintiff is also entitled to reasonable attorneys' fees and costs.

131. Pursuant to N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) and the

remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment

as set forth below.

## SIXTH CAUSE OF ACTION
(Declaratory Relief)

132. Plaintiff repeats, realleges and incorporates by reference the allegations

contained in paragraphs 1 through 131 of this Complaint as though set forth at length herein.

133. An actual controversy has arisen and now exists between the parties in that

Plaintiff contends, and is informed and believes that Defendant denies, that the Home Depot

Store contains access barriers denying blind customers the full and equal access to the goods,

services and facilities of the Home Depot Store, which Home Depot owns, operates and/or

controls, fails to comply with applicable laws including, but not limited to, Title III of the

American with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., N.Y. Exec. Law § 296, *et seq*., and

N.Y.C. Administrative Code § 8-107, *et seq*. prohibiting discrimination against the blind.

134. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of Plaintiff and against the Defendants as follows:

a)   A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., N.Y. Exec. Law § 296, *et seq*., and N.Y.C. Administrative Code § 8-107, *et seq*., and the laws of New York;

b)   A preliminary and permanent injunction requiring Defendant to take all the steps necessary to maintain and/or operate its store in full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Home Depot Store are readily accessible to and usable by blind individuals;

c)   A declaration that Defendant owns, maintains and/or operates its Store in a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., N.Y. Exec. Law § 296, *et seq*., and N.Y.C. Administrative Code § 8-107, *et seq*., and the laws of New York;

d)   Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff for violations of their civil rights under New York State Human Rights Law and City Law;

e)   Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by city, state and federal law;

f)   For pre- and post-judgment interest to the extent permitted by law; and

g)   For such other and further relief which this court deems just and proper.

Dated: Scarsdale, New York
          October 21, 2024

                                        SHAKED LAW GROUP, P.C.
                                        Attorneys for Plaintiff

                              By:*/s/Dan Shaked*
                                   Dan Shaked, Esq.
                                   14 Harwood Court, Suite 415
                                   Scarsdale, NY 10583
                                   Tel. (917) 373-9128
                                   e-mail: ShakedLawGroup@Gmail.com